IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

          Plaintiff,

vs.                                                 Case No.   22-40009-TC

GRZEGORZ ADAM MADEJ,

          Defendant.

## MEMORANDUM AND ORDER

This matter comes before the court on the government's oral motion to detain defendant Grzegorz Adam Madej ("Madej") and its Memorandum in Support of Its Motion for Detention (ECF 7).  The government asks the court to detain Madej under 18 U.S.C. § 3142(f)(2)(B) on the grounds that there is a serious risk that Madej will obstruct justice if he is released.  Madej, on the other hand, has filed a Motion for Pretrial Release (ECF 8) pursuant to which he asks to be released from custody to live with his wife in Illinois.  As discussed in further detail below, the government has not met its burden to show that pretrial detention is warranted in this case.  Accordingly, the government's motion is denied and Madej's motion is granted.

**I.**     **BACKGROUND**

Despite the interesting legal issues presented by the current motions, the facts are relatively undisputed and straightforward.  Madej was born in Poland in 1959.  He came to the United States with his parents in 1961, when he was still a baby.  He was admitted to the United States as a lawful permanent resident but never became a naturalized citizen.  When he was 21 years old, he brutally murdered Barbara Doyle.  In 1982, he was convicted in Cook County, Illinois, of one count of murder and three counts of felony murder, predicated on the felonies of armed robbery, rape, and deviate sexual assault—all as more fully described in *People of the State of Illinois v.*

*Madej*, 478 N.E.2d 392 (Ill. 1985), and *People of the State of Illinois v. Madej*, 685 N.E.2d 908 (Ill. 1997). Suffice it to say that the crime was heinous. Even Madej now admits this. (ECF 7, at 2 ("There is no dispute that this crime was a heinous one.").) He was sentenced to death.

In 2002, the United States District Court for the Northern District of Illinois granted a writ of habeas corpus, vacated the death sentence, and ordered the State of Illinois to resentence Madej to a term of years. *See generally United States ex rel. Madej v. Gilmore*, No. 98 C 1866, 2002 WL 370222, at *1 (N.D. Ill. Mar. 8, 2002); *United States ex rel. Madej v. Schomig*, 223 F. Supp. 2d 968 (N.D. Ill. 2002); *see also United States ex rel. Madej v. Schomig*, No. 98 C 1866, 2002 WL 31386480, at *1 (N.D. Ill. Oct. 22, 2002) (denying the State's second motion for reconsideration). In 2003, the Governor of Illinois granted Madej clemency, commuting his death sentence to a term of life imprisonment without the possibility of parole—so-called "natural-life imprisonment." After the Governor's order, the state of Illinois did not timely resentence Madej according to the writ of habeas corpus issued by the federal district court. In 2004, the Seventh Circuit ordered the State of Illinois to promptly carry out those resentencing proceedings. *See Madej v. Briley*, 370 F.3d 665 (7th Cir. 2004). In 2004, the Illinois Circuit Court resentenced him to a term of years, which allowed for the possibility of parole.

After approximately 40 years in prison, Madej was scheduled to be released on parole on August 23, 2021. In the months leading up to his release, an immigration court issued an order finding him removable from the United States under 8 U.S.C. § 1227(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"). When Madej was released from Illinois state custody on August 23, he was immediately taken into federal custody by Immigration and Customs Enforcement ("ICE") officials to be deported to Poland. After initially being held in a facility in St. Louis, ICE transferred Madej to a jail facility in Chase County, Kansas. While in ICE custody,

ICE officials repeatedly advised Madej of his obligation to facilitate obtaining the documents needed to deport him from the United States to Poland and warned him that he could face criminal prosecution and imprisonment if he failed to comply. ICE officials provided Madej with forms, notices, and instructions to this effect on September 30, October 29, November 30, and December 30, 2021. Each time, Madej refused to sign and provide the required paperwork.

On February 9, 2022, a grand jury returned an indictment charging Madej with one count of Hindering Removal by willfully failing and refusing to make a timely application in good faith for a travel document and other document(s) necessary for his departure from the United States, in violation of 8 U.S.C. § 1253(a)(1)(B). (ECF 1.) Madej was arrested on February 11. During his initial appearance on February 17, the government moved to detain him and requested a continuance of the detention hearing, which the court granted. (ECF 3.) On February 18, the government filed a brief in support of its motion, and Madej filed a cross-motion seeking pretrial release. (ECF 7, 8.) On February 22, the court held a detention hearing, and took the government's motion under advisement. (ECF 11.)

Madej is still in the same Chase County jail, but he is now in the custody of the United States Marshals Service ("USMS"). He is subject to an ICE detainer. Consequently, if the court orders Madej to be released from the USMS custody, he will immediately be taken back into ICE custody and will likely remain in the Chase County jail, at least in the near term. However, how long ICE would continue to detain Madej is uncertain. For this reason and others, the parties agreed that the court should evaluate the issue of detention *not* based on Madej's anticipated release to the ICE detainer but rather based on his proposed release plan to live with his wife of 28 years in Springfield, Illinois. The Illinois Parole Office approved this as his residence.

## II.     ANALYSIS

### A.     Temporary Detention Under 18 U.S.C. § 3142(d)

The court first addresses temporary detention pursuant to 18 U.S.C. § 3142(d) of the Bail Reform Act.  If a defendant "is not a citizen of the United States or lawfully admitted for permanent residence," temporary detention under § 3142(d) is warranted if the defendant "may flee or pose a danger to any other person or the community."  18 U.S.C. § 3142(d).  If so, the court "shall order the detention of such person, for a period of not more than ten days, excluding Saturdays, Sundays, and holidays, and direct the attorney for the Government to notify . . . the appropriate official of the Immigration and Naturalization Service."  *Id.* § 3142(d).  "If the official fails or declines to take such person into custody during that period, such person shall be treated in accordance with the other provisions of [the Bail Reform Act], notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings."  *Id.*

During the February 22 detention hearing, the parties agreed that Madej is not a United States citizen and has lost his status as a lawful permanent resident.  The court therefore determined that he is a person described in § 3142(d)(1)(B). But the government stated that it does not contend that Madej may flee or pose a danger to any other person or the community, as required by § 3142(d)(2).  Consequently, there is no basis upon which the court can find that Madej should be temporarily detained under § 3142(d).  Therefore, the court proceeds to consider whether detention is warranted under 18 U.S.C. § 3142(f).

### B.     Detention Under 18 U.S.C. § 3142(f)

The government may move for detention in cases involving certain specified offenses, *see id.* § 3142(f)(1); cases involving a serious risk that the defendant will flee, *see id.* § 3142(f)(2)(A); or in cases involving a serious risk that the defendant will obstruct or attempt to obstruct justice,

4

*see id.* § 3142(f)(2)(B).  At the detention hearing, the government clarified that it does not seek detention under § 3142(f)(1) because Madej is not charged with an offense listed in that subsection. The government also stated that it does not seek detention under § 3142(f)(2)(A) on the grounds that Madej is a serious flight risk.  Rather, the government seeks detention based only on § 3142(f)(2)(B) on the ground that there is a serious risk that Madej will obstruct justice.  The government contends he will obstruct justice by "adamantly refusing" to complete the paperwork necessary to remove him from the United States and return him to Poland.  (ECF 7, at 5-6.)

A defendant may be detained pending trial if the government can show "a serious risk that such person will obstruct or attempt to obstruct justice."  18 U.S.C. § 3142(f)(2)(B).  The statute does not define obstruction of justice.  *See United States v. Madoff*, 586 F. Supp. 2d 240, 249-50 (S.D.N.Y. 2009) (discussing the parties' arguments on the meaning of obstruction of justice within the context of the Bail Reform Act).  In addition, the standard of proof is unclear.  Some courts require the government to show a serious risk of obstruction of justice by a preponderance of the evidence, whereas others require clear and convincing evidence.  *See, e.g.*, *id.* at 248 (stating that "the Government must first establish by a preponderance of the evidence that . . . there is a serious risk that [the defendant] will obstruct or attempt to obstruct justice"); *United States v. Curtis*, No. 2:20CR00043-RJS-CMR, 2021 WL 2117145, at *3 (D. Utah May 25, 2021) ("[S]ome courts have determined that where the government seeks detention under [§ 3142(f)(2)(B)], it must sustain its burden of proof by 'clear and convincing evidence.'").

Assuming for the sake of argument that Madej's refusal to fill out the required paperwork constitutes obstruction of justice,[1] the government has not met its burden under § 3142(f)(2)(B) by

---

[1] Some courts analyzing § 3142(f)(2)(B) have looked to whether there is a serious risk that the defendant will obstruct the pending proceeding, and not whether the defendant is engaging in obstruction generally.  *See, e.g., United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988) ("[W]e do not think that the preventive detention provisions of the Bail Reform Act were meant to be invoked

even a preponderance of the evidence. The statute requires the government to establish "a serious risk that such person *will* obstruct or attempt to obstruct justice." 18 U.S.C. § 3142(f)(2)(B) (emphasis added). By its plain language, this connotes actions that a defendant *will* take in the future if the defendant is released on bond, above and beyond the actions the defendant has already taken or will take if he is detained. *See also Madoff*, 586 F. Supp. 2d at 250 ("The statute, by its nature, is always looking forward."); *Curtis*, 2021 WL 2117145, at *3 ("This is a forward-looking inquiry, requiring a showing of a serious risk the defendant will obstruct justice in the future."). In other words, it authorizes the court to detain the defendant to prevent further obstruction of justice. But Madej already refused to fill out the paperwork, and the court is persuaded that this will continue regardless of whether he is detained. After all, ICE repeatedly warned him that he could be criminally prosecuted and imprisoned for this, but he still refused. He has now been indicted, and yet he still refuses. The court is therefore unpersuaded that there is any circumstance in which he will voluntarily sign the paperwork necessary to assist with his deportation to a foreign country that is entirely unfamiliar to him; he would rather remain in the United States, even if incarcerated. Consequently, the government has not established a serious risk that Madej "*will* obstruct or attempt to obstruct justice" because the status quo will continue regardless of whether he is detained. Thus, detention pursuant to § 3142(f)(2)(B) is not warranted.

The parties did not address one additional wrinkle in the statutory language. The subsection of § 3142 that authorizes pretrial detention is subsection (e), not subsection (f) with the serious-risk-of-obstruction-of-justice prong discussed above. Subsection (e) requires the court to order detention "[i]f, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the

---

in order to safeguard a state domestic relations proceeding unconnected to the federal proceeding that has given rise to defendant's bail hearing.").

appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Subsection (f) then sets forth the circumstances that trigger the right to a detention hearing. And subsection (g) lists the factors the court must consider "in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(g). Given the plain language of subsections (e) and (g), it is questionable whether the court could detain a defendant based solely on a risk of obstruction of justice where there is no evidence that the obstruction at issue would pose a danger to others. *Cf. Ploof*, 851 F.2d at 12 ("dangerous to the community and obstruction of justice may not be separate and distinct categories").

Here, the government has not established that Madej's alleged obstruction if he were released—his failure to cooperate with obtaining the necessary removal paperwork—would pose a risk of harm to others. Rather, the government argues that releasing Madej under these circumstances would be a perverse application of the Bail Reform Act because his own criminality in violating the INA by failing to obtain the necessary paperwork to return to Poland would result in his release to the community. While that may be so, it does not establish that his release would pose a risk of harm to the community. The government also argues that Madej wants to remain in the United States so badly that he will take all necessary steps to ensure that he does not get deported back to Poland, including committing further crimes necessary to remain in the United States. But this is speculation. He has already succeeded in remaining in the United States by simply refusing to sign the paperwork. He has already spent 40 years in prison and, as evidenced by his refusal to voluntarily sign the paperwork despite being threatened with further imprisonment, the court is persuaded that he would rather be incarcerated in a United States prison than return to a foreign country where he knows no one. Madej is now 62 years old and has health

issues. He seeks release to live with his wife of 28 years in Springfield, Illinois. He is subject to parole supervision in Illinois. The parties have already agreed to his conditions of release if the court releases him on bond, including location monitoring. The court finds that the combination of conditions of release as set forth in the Order Setting Conditions of Release are sufficient to reasonably assure that he will appear as required in this action and not pose a risk of harm to others.

**IT IS THEREFORE ORDERED** that the government's motion for detention is denied, and Madej's Motion for Pretrial Release (ECF 8) is granted. The court will separately issue the Order Setting Conditions of Release.

**IT IS SO ORDERED.**

Dated March 10, 2022, at Kansas City, Kansas.

s/Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge
